UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DALY N. BRAXTON,

           Petitioner,

vs.                              Case No. 3:08-cv-615-J-34JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

           Respondents.
_____

**ORDER**

**A. Status**

Petitioner Daly N. Braxton, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) with exhibits under 28 U.S.C. § 2254 on June 13, 2008, pursuant to the mailbox rule.[2] He challenges a 1995 state court (Duval County,

---

[1] The Secretary of the Florida Department of Corrections, having custody of Petitioner, is the proper Respondent.

[2] The Petition (Doc. #1) was filed in this Court on June 19, 2008; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (June 13, 2008). See Houston v. Lack, 487 U.S. 266, 275-76 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

Florida) judgment of conviction for burglary with assault and dealing in stolen property.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall

>     not be counted toward any period of limitation
>     under this subsection.

28 U.S.C. § 2244(d). Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). <u>See</u> Respondents' Motion to Dismiss (Doc. #8) (Response) with exhibits (Resp. Ex.). On July 2, 2008, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #6), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner has filed a memorandum opposition to the motion. <u>See</u> Petitioner's Reply in Opposition to Respondents' Motion to Dismiss (Reply) (Doc. #14), filed October 14, 2008. He also filed an Appendix (Doc. #12) with seventy-four exhibits (Pet. Ex.). Additionally, the parties filed supplemental memoranda. <u>See</u> Respondents' Response to Petitioner's Claim of Equitable Tolling (Supplemental Response) (Doc. #30); Petitioner's Supplemental Reply to Respondents' Response to Petitioner's Claim of Equitable Tolling (Supplemental Reply) (Doc. #31) with exhibits (Pet. Supp. Ex.). This case is now ripe for review.

### B. One-Year Limitations Period

The following procedural history is relevant to the one-year limitations issue. On April 7, 1995, the trial court sentenced Petitioner. Resp. Ex. B. The appellate court affirmed Petitioner's conviction and sentence per curiam on July 2, 1996. <u>Braxton v. State</u>, 675 So.2d 1034 (Fla. 1st DCA 1996); Resp. Ex. D.

The mandate issued on July 18, 1996.[3]  Petitioner did not seek review in the United States Supreme Court.

Petitioner's conviction became final on September 30, 1996 (90 days after July 2, 1996).  See Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion.").  Because Petitioner's conviction was after April 24, 1996, the effective date of the AEDPA, Petitioner had one year from the date his conviction became final to file the federal petition (September 30, 1997).  His Petition, filed on June 13, 2008, is due to be dismissed as untimely unless he can avail himself of one of the statutory provisions which extends or tolls the limitations period.

The one-year period of limitations started running on October 1, 1996, the day after Petitioner's conviction became final, and ran for two hundred and sixty (260) days, until June 18, 1997, when Petitioner filed a pro se motion for post conviction relief (Rule 3.850 motion). Resp. Ex. E.  The trial court denied the motion on December 1, 1997, and Petitioner appealed.  Resp. Ex. F.  The appellate court affirmed the denial per curiam on October 2, 1998.

---

[3] Online docket, Daly N. Braxton v. State of Florida, Case No. 1D95-1592, website for the First District Court of Appeal (http://www.1dca.org).

Braxton v. State, 728 So.2d 207 (Fla. 1st DCA 1998); Resp. Ex. G. The mandate issued on October 28, 1998.[4] Resp. Ex. H.

During the pendency of Petitioner's Rule 3.850 motion, he filed a pro se motion pursuant to Florida Rule of Criminal Procedure 3.800(a) on August 13, 1998. Resp. Ex. I at 1-15. The trial court denied that motion on July 19, 1999. Id. at 16-18. Petitioner filed a notice of appeal on August 17, 1999, pursuant to the mailbox rule. Id. at 26. The appellate court dismissed the appeal on October 20, 1999, due to Petitioner's failure to show cause why the appeal should not be dismissed since it appeared to the court that the notice of appeal was not timely filed. Resp. Exs. J; K.

Additionally, during the pendency of his first Rule 3.800 motion, Petitioner filed a second pro se Rule 3.800 motion on August 23, 1999. Resp. Ex. L. The trial court denied the motion on July 24, 2001, and Petitioner appealed on August 30th. Resp. Exs. M; N. Once again, the appellate court ordered Petitioner to show cause why the appeal should not be dismissed since it appeared to be untimely. Resp. Ex. O. This time, Petitioner responded that he had not received the order denying the motion until August 20, 2001. Resp. Ex. P. On October 25, 2001, the appellate court

---

[4] Online docket, Daly Nathaniel Braxton v. State of Florida, Case No. 1D01-3854, http://www.1dca.org.

dismissed the appeal per curiam. Resp. Ex. Q. The mandate issued on January 23, 2002.[5] Resp. Ex. R.

Respondents contend that the two Rule 3.800 motions were not properly filed. Response at 4; Supplemental Response at 6-8. While Petitioner concedes that his Petition is untimely filed, he asserts that the Rule 3.800 motions were properly filed since his first notice of appeal was timely filed and his second notice of appeal should be deemed timely filed. Reply at 1-2; Supplemental Reply at 7-8. This Court agrees that those motions were properly filed. Thus, the Rules 3.800 and 3.850 motions tolled the running of the one-year limitations period from June 18, 1997, until January 23, 2002. Accordingly, the one-year limitations period started running again the next day, on January 24, 2002, and ran for three hundred and fifty-four (354) days, until Petitioner filed another pro se motion on January 13, 2003.

Based on the foregoing, the Petition, filed June 13, 2008, is untimely filed and due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted. Petitioner asserts that he is entitled to equitable tolling for the periods of time in which he was mentally incapacitated. Reply at 6-14. Initially, Braxton requested that this Court equitably toll the following periods of time: (1) August

---

[5] Online docket, Daly N. Braxton v. State of Florida, Case No. 1D98-137, http://www.1dca.org.

24, 1996, through June 18, 1997, the filing date of his first Rule 3.850 motion; (2) January 23, 2002, through January 13, 2003, the filing date of his fourth post conviction motion; and (3) May 6, 2008, to June 13, 2008, the filing date of his Petition in this Court. Id. at 6, 13; Supplemental Reply at 5. However, Petitioner now claims that "he was mentally incapacitated not just during the three periods he seeks to have equitably tolled, but during the entire period of August 24, 1996, up until February 23, 2005 (the date Petitioner stopped receiving mental health treatment), and up until this present day." Supplemental Reply at 6-7 (footnote omitted).

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted). The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence,

and this high hurdle will not be easily surmounted. Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted). Here, Petitioner simply has not met the burden of showing that equitable tolling is warranted.

The Eleventh Circuit has held that an allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling. Lawrence v. Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007); see Fox v. McNeil, 373 Fed.Appx. 32, 34 (11th Cir. 2010) (per curiam) (not selected for publication in the Federal Reporter) (finding that petitioner had not met his burden to prove that equitable tolling was appropriate where he had "failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"), cert. denied, 131 S.Ct. 1047 (2011); United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (finding that the pro se defendant's alleged mental disorders did not justify equitable tolling of the one-year limitations period, absent a showing that his condition resulted in "profound mental incapacity"). Petitioner's assertion regarding his mental incapacity is insufficient to warrant equitable tolling.

The documents reflect the following relevant facts. Petitioner was admitted to the crisis stabilization unit (CSU) on August 28, 1996, and was released on September 25, 1996. Reply at 9; Pet. Ex. 66. At that time, the mental health staff classified Petitioner as an S-3 due to his mental health history and depression.[6] Just before Braxton's discharge, the mental health staff reported that he had received his GED at the age of sixteen and liked to "read, write, and research intellectual inquiries" and that his IQ was 118 (average to slightly above average intelligence).[7] P. Ex. 66, Bio-Phycho-Social Assessment, dated September 16, 1996. Additionally, upon discharge, the mental health team reported that Braxton would "be able to function adequately in an open population setting with outpatient mental health services." Id. Since his confinement in CSU occurred before his conviction became final (September 30, 1996), any equitable tolling would not benefit Petitioner.

---

[6] The S-1, S-2, and S-3 are mental health classifications. S-1 means that there is no indication of mental health history or active mental health problems. However, an S-2 or S-3 denotes a history of mental health problems or social history indicators that require follow-up and further mental health screening. Pet. Ex. 65, Chronological Record of Outpatient Mental Health Care, Apalachee Correctional Institution, dated March 30, 2000. The higher levels of mental health care are isolation management, transitional stabilization, or crisis stabilization.

[7] In Lawrence, the petitioner's full scale IQ was 81. See 421 F.3d at 1227. Additionally, in Hunter, the court stated that the petitioner had a full scale IQ score of 59, which is at the low-end of the mildly retarded range. Hunter v. Ferrell, 587 F.3d 1304, 1308-09 (11th Cir. 2009) (per curiam).

After discharge from CSU, Braxton received ongoing outpatient mental health care. His mental health status was assessed each month, and the psychologists found that Braxton was angry, depressed, and bipolar, had disciplinary problems, and suffered from some sporadic delusional thoughts. Pet. Ex. 65. From September 1996 through 2001, while classified as either an S-2 or S-3, Petitioner continued to receive monthly mental health assessments. During that time period, the staff reported that Braxton had "no signs of significant mental or emotional impairment." Id. When reporting "mild" signs of mental or emotional impairment on March 31, 2000, and January 17, 2001, the staff attributed it to Braxton's depression, lack of sleep, and improper diet. Id. Nevertheless, at those sessions, the staff also reported that Braxton was thinking logically, was alert and oriented, had good insight and judgment and no delusional thoughts. Id.; see Pet. Supp. Ex. O, Chronological Records of Outpatient Mental Health Care, dated January 22, 2001, February 25, 2001, March 2, 2001, and April 20, 2001.

In December 2001, the mental health staff re-classified Braxton from an S-2 to an S-1, terminated all outpatient services, and reported that he had not had symptoms of depression since May 31, 2001, and had not been on medication since May 11, 2001. Pet. Ex. 65, Outpatient Treatment Summary, dated December 4, 2001. On August 22, 2002, while Braxton was in confinement for disciplinary

reasons, the staff conducted a confinement evaluation and reported "no evidence of MH [(mental health)] problems at this contact." Id., Chronological Record of Outpatient Mental Health Care, dated August 22, 2002. Moreover, the staff documented that Braxton's thought processes were logical and coherent and that his attention was focused. Id.

In November 2003, the records reflect that Braxton again showed signs of depression due to having disciplinary problems. Id., Mental Health Emergency Nursing Assessment, dated November 3, 2003. Later, on or about March 25-29, 2004, Braxton was placed on suicide observation status, and on or about June 21-23, 2004, he was admitted to the infirmary isolation room due to his self-harm statements. Pet. Ex. 65, Discharge Summary, dated June 23, 2004. Nevertheless, during 2004 through 2006, he actively litigated in the state courts. See Pet. Exs. Additionally, sometime before June 26, 2006, Braxton became aware that he had missed the deadline for timely filing a Petition in federal court. See Pet. Ex. 72.

After an extensive review of Petitioner's medical and mental health records, this Court opines that the records refute his assertions of mental incompetence. The mental health records conclusively demonstrate that Petitioner was mentally capable of filing a timely Petition in this Court. Although Petitioner's medications and/or lack of medications may have impaired his ability to draft legal documents for brief periods during the

relevant time periods, his mental health records establish that any impairment was not sufficient to render him mentally incompetent and would not have affected his ability to timely file the Petition in this Court. In sum, Petitioner has not presented sufficient evidence to create a factual issue as to a causal connection between any mental incompetence and his ability to file a timely Petition. Therefore, this Court finds that Petitioner is not entitled to equitable tolling for those 614 days (October 1, 1996, until June 18, 1997, and January 24, 2002, until January 13, 2003). Any other requested equitable tolling for additional time periods would not benefit Petitioner.

Additionally, Petitioner asserts that, when his appellate attorney abandoned him in 2006, he filed a pro se petition for writ of habeas corpus in the United States Supreme Court on July 21, 2006, pursuant to the mailbox rule. Supplemental Reply at 2-5; see Pet. Exs. 34, 70, 72, 73, 74. Thus, he contends that his Petition, filed on June 13, 2008, in this Court should relate back to that July 21, 2006 date. This argument is unavailing.

Petitioner has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him. For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).

## C. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Respondents' request to dismiss this case with prejudice (Doc. #8) is **GRANTED**.

2. This case is **DISMISSED** with prejudice.

3. The Clerk of the Court shall enter judgment dismissing this case with prejudice and shall close this case.

4. If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of July, 2011.

MARCIA MORALES HOWARD
United States District Judge

- 14 -

```
sc 7/18
c:
Daly N. Braxton
Ass't Attorney General (Guard)
```